# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 04/29/2026 04:56:43 PM.
30-2026-01566183-CU-FR-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By G. Ramirez, Deputy Clerk.

CROSNER LEGAL, P.C.
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210

Adam C. York (*Pro Hac Vice application forthcoming*)
adam@crosnerlegal.com
1021 West Adams St. Suite 200
Chicago, Illinois 60607
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiff and the Proposed Class*

Assigned for All Purposes
Judge William Claster
CX-101

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF ORANGE**

MAXEL MORELAND, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

EQUIMINE INC.,

Defendant.

Case No. 30-2026-01566183-CU-FR-CXC

**CLASS ACTION COMPLAINT FOR:**

1. Violations of the Colorado Prevention of Telemarketing Fraud Act, Colo. Rev. Stat. §§ 6-1-301, *et seq.*

DEMAND FOR JURY TRIAL

Plaintiff Maxel Moreland ("Plaintiff") bring this class action complaint against Equimine Inc. (hereinafter "Equimine" or "Defendant"), a maker of sales software operating the publicly accessible online directory available at www.propstream.com. This action asserts violations of Colorado's Prevention of Telemarketing Fraud Act ("PTFA"), Colo. Rev. Stat. § 6-1-301, *et seq.* These allegations are grounded in counsel's investigation and are presented upon information and belief, except for those directly concerning Plaintiff, which are based on personal knowledge.

## INTRODUCTION

1. This complaint seeks redress for Equimine's pervasive practice of compiling and commercially disseminating the cellular telephone numbers of Colorado residents without their explicit, affirmative consent. This conduct directly contravenes the letter and spirit of the PTFA, a vital piece of consumer legislation designed to protect the privacy of individuals, particularly regarding their mobile phone numbers, which are widely regarded as personal and private communication channels.

2. The Colorado General Assembly enacted the PTFA with a clear legislative declaration recognizing the rapid increase in commercial telephone solicitation and the unique risks and potential for abuse it presents. The legislature found that "widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest." Colo. Rev. Stat. § 6-1-301.

3. To address these concerns, an amendment to the PTFA, HB05-1288, was signed into law on May 27, 2005, explicitly prohibiting the commercial listing of a cell phone number in a directory without the owner's permission, effective September 1, 2005. This amendment aimed at protecting individuals from the misappropriation of their personal information and to uphold privacy in an increasingly digital world. Specifically, Colo. Rev. Stat. § 6-1-304(4) states:



CROSNER LEGAL, P.C.

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

4. This prohibition is designed to protect privacy. As former State Representative Mark Cloer,[1] a prime sponsor of HB05-1288,[2] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[3]

5. Despite this clear statutory prohibition, Defendant operates a website, www.propstream.com, which functions as a data aggregator, openly collecting and listing personal information—including cell phone numbers, job history, and email addresses—without explicit consent. This data, sourced from various public records and third-party data brokers, is made readily available to anyone with internet access. Equimine monetizes this personal data, including the cell phone numbers of Colorado residents, through its publicly accessible directory, thereby profiting from the unauthorized disclosure of private information.

6. This alleged conduct is not merely a technical violation; it exposes individuals to significant risks. The Federal Trade Commission ("FTC") has long warned about the potential dangers associated with data brokers, including the facilitation of harassment, stalking, identity theft, and vulnerability to fraudulent schemes.[4] Equimine's readily accessible compilation of personal data, including cell phone numbers, creates a fertile ground for

---

[1] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.

[2] https://www.leg.state.co.us/CLICS2005A/csl.nsf/fsbillcont3/1BB0D3E00348AC6987256F90007C20C7?Open&file=1288_enr.pdf

[3] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

[4] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf.



CROSNER LEGAL, P.C.

malicious actors to exploit this information for harmful purposes, such as scams, phishing, and doxxing.

7. Plaintiff brings this action to compel Defendant to cease its unlawful practices, protect the privacy rights of Colorado cell phone users, and recover statutory damages provided by the PTFA.

## **PARTIES**

8. Plaintiff Maxel Moreland is, and has been at all relevant times, a resident of Manitou Springs, Colorado. Plaintiff's cellular telephone number was listed by Defendant in its directory, available at www.propstream.com, for commercial purposes. Defendant never requested, and Plaintiff never provided, affirmative consent, through written, oral, or electronic means, for such listing. In fact, Plaintiff has no relationship with Defendant whatsoever and did not discover Defendant's use of his personal information until shortly before filing this suit.

9. Defendant Equimine Inc. is a California corporation with its principal place of business in Lake Forest, California. At all times during the class period, Defendant owned and operated the website with the URL www.propstream.com.

## **JURISDICTION AND VENUE**

10. This Court has jurisdiction pursuant to Article VI, Section 10 of the California Constitution and California Code of Civil Procedure § 410.10.

11. This Court has general personal jurisdiction over Defendant because Defendant is incorporated in California and headquartered in Lake Forest, California, and a corporation's "place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

12. Venue is proper in this county pursuant to California Code of Civil Procedure § 395.5 and California Civil Code § 1780(d) because Defendant's principal place of business is located in this county.

CROSNER LEGAL, P.C.

## FACTUAL ALLEGATIONS

### OVERVIEW OF THE PROPSTREAM DIRECTORY

13. Equimine operates as a data broker, gathering and then re-selling or sharing consumers' personal information. It provides a comprehensive real estate search for investors agents, and brokers by compiling vast amounts of real estate data from diverse sources, including public records, multiple list service feeds, and other data brokers.

14. The website, www.propstream.com, functions as a public real estate directory, allowing anyone on the internet to search by address for individuals owning title to a property:




15. Upon a search, the site provides comprehensive information about the property. For example, below is an example of the information provided when searching for Plaintiff's address (address redacted):



16. Once a property is found, users of the website can perform a "skip trace" of the property to reveal the contact information of its owners. Below is an example of the confirmation screen that appears when a user requests a skip trace:




17. Once a skip trade is performed, users may view the contact information of the property's owners, including mobile phone numbers, landlines phone numbers, and emails addresses. Below is an example of the information revealed when Plaintiff's property is skip traced:




18. Equimine sells access to individuals' cell phone numbers and email addresses through "Skip Trace Credits," which are available for customers to purchase via subscription plans.

19. The collection and dissemination of these personal details, including cell phone numbers, serves a vital commercial purpose for Defendant. Data brokers like Equimine generate income primarily by selling access to and information about private citizens. This inherent commercial value of the data collected underscores the violation of the PTFA when consent is not obtained.

20. Defendant directly profits from its data publishing activities by selling subscription access for the ability to search for contact information—including cell phone numbers—about individuals, including Colorado residents. Selling individuals' contact information is the core of Equimine's business model, notwithstanding the fact that it offers a one-week free trial period.

## DEFENDANT'S CONDUCT HARMS COLORADANS

21. Equimine's practices inflict tangible harm upon Colorado residents by undermining their privacy rights and exposing them to significant risks. The commercial value of consumer data is well-established, with the FTC recognizing that "data is currency" and that larger datasets yield greater potential for analysis and profit.[5] By listing cell phone numbers without consent, Equimine deprives Coloradans of the control over their personal data and its inherent economic value. Consumers are increasingly aware of this value and are willing to pay a premium for services that prioritize data protection.

22. In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their personal data.[6]

---

[5] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf.

[6] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

23. These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data. Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their data.[7] A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing business with companies who they believe do not protect their privacy.[8] The same is true for 80 percent of smartphone users, who say that they avoid using smartphone apps that they don't believe protect their privacy.[9]

24. Defendant's misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights. It also deprives them of the real, quantifiable value of such data.

25. Further, sites like Defendant's "offer a wealth of information that can be exploited by malicious actors."[10] For one, "[b]undling [personal data] all together and making it so easily accessible can … put ordinary people at risk of … stalking and other forms of harassment."[11] Second, sites like Defendant's contain "comprehensive data [that] allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[12] This "put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[13]

---

[7] *See, e.g.*, J. Y. Tsai, S. Egelman, L. Cranor, A. Acquisti. The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study. Information Systems Research, 2010 https://www.heinz.cmu.edu/~acquisti/papers/acquisti-onlinepurchasing-privacy.pdf.

[8] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.

[9] *Id.*

[10] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[11] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.

[12] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[13] http://www.nytimes.com/2007/05/20/business/20tele.html.

26. Information disclosures like Defendant's are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[14] The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[15]

27. Making matters worse, "[o]nce marked as receptive to [a specific] type of spam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[16]

28. Defendant's collection and display of Coloradans' cell phone numbers without consent frustrates the legislative intent of the PTFA to safeguard privacy and protect consumers from telemarketing fraud.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action as a class action pursuant to Cal. Code. Civ. Proc. § 382 on behalf of the following Class:

> All persons in Colorado whose cellular telephone numbers were listed on Defendant's website, www.propstream.com, during the applicable statute of limitations.

30. Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

31. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

---

[14] *Id.*

[15] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

[16] *Id.* at p. 3.

32. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

33. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Defendant is a data broker for investors and real estate agents. On information and belief, Defendant stores millions of phones numbers in its database, and the proposed Class contains thousands of Colorado residents if not many more.[17] The proposed Class thus has so many members that joinder of all members is impracticable.

34. Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. whether Defendant collected and publicly disseminated Plaintiff's and the Class's cellular telephone numbers;

b. whether Defendant unlawfully disclosed and continues to disclose its users' cellular telephone numbers in violation of the PTFA; and

c. whether Defendant disclosed Plaintiff's and the Class's cellular telephone numbers without consent.

35. Typicality: Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, had his cellular telephone number collected and disclosed by Defendant, without his consent.

36. Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seek to represent; the PTFA claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced

[17] While discovery will reveal the precise size of the proposed Class, the set of Colorado individuals whose cell phone numbers are listed in Defendant's directory is likely to number in the tens or hundreds of thousands.



CROSNER LEGAL, P.C.

in complex class action litigation and Plaintiff intend to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

37. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

38. Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

39. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE PREVENTION OF TELEMARKETING FRAUD ACT**
**COLO. REV. STAT. § 6-1-304, *ET SEQ.***

40. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

41. Colo. Rev. Stat. § 6-1-304(4)(a) explicitly states that "[o]n or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing."

42. Defendant has failed to comply with this PTFA mandate. Defendant knowingly lists Coloradans' cell phone numbers. The website propstream.com clearly provides users with the ability to search for individuals and obtain cellular phone numbers as part of its sales prospecting software. The very nature of the site, which aggregates and displays this data, demonstrates knowledge of the presence of cell phone numbers within its database.

43. Defendant's website, propstream.com, undeniably functions as a "directory." As defined, a directory is an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of

businesses in a particular area."[18] Defendant's operations fully align with this definition, as it allows users to search for names, email addresses, and phone numbers in a structured manner.

44. Defendant engages in this conduct for a commercial purpose. Defendant's business model is based on collecting and providing access to personal data, a commodity with inherent monetary value. Defendant recognizes this fact; it charges for subscription access for its users to increase the number of searches that they can conduct.

45. Defendant never requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing." Instead, Defendant compiles and lists the cell phone numbers of Coloradans with whom it has no prior engagement, no connection, and who are often unaware of the site's existence or its unauthorized publication of their personal information.

46. Defendant's misappropriation of Class Members' personal data, including its economic value, has directly infringed upon Class Members' PTFA privacy rights. This deprivation extends to the real, quantifiable value of such data. Furthermore, it has exposed Class Members to elevated and unnecessary risks of harassment, scams, and unwanted telemarketing solicitations.

47. Thus, on behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to comply with the PTFA; (3) penalties, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

[18] *See* Oxford Learner's Dictionary, *Directory*, https://www.oxfordlearnersdictionaries.com/us/definition/english/directory.33 (last visited Apr. 29, 2026).


CROSNER LEGAL, P.C.

## **REQUEST FOR RELIEF**

Plaintiff, individually, and on behalf of all others similarly situated, requests for relief pursuant to each claim set forth in this complaint, as follows:

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel.

b. Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I).

c. Awarding penalties, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense.

d. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, inter alia, an Order requiring Defendant to comply with the PTFA.

e. Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

f. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable.

g. Awarding such other and further relief as equity and justice may require.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

[Signature page follows.]

Dated: April 29, 2026

Plaintiff Maxel Moreland, individually, and on behalf of all others similarly situated

By: s/ Michael T. Houchin
Michael T. Houchin

CROSNER LEGAL, P.C.
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210

Adam C. York (*Pro Hac Vice application forthcoming*)
adam@crosnerlegal.com
1021 West Adams St. Suite 200
Chicago, Illinois 60607
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiff and the Proposed Class*